IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION


OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

     Plaintiffs,

v.           CIVIL ACTION NO.   3:11-0009

MAPLE COAL COMPANY,

     Defendant.


**MEMORANDUM OPINION AND ORDER**

  On May 7, 2012, the parties filed a Notice of Lodging of Proposed Consent Decree.   On June 13, 2012, the United States filed a notice indicating that it has no objection to the entry of the proposed decree.   The 45 day comment period required by 33 U.S.C. § 1365(c)(3) has now expired, and the parties have requested that the Court enter the proposed decree if it is found to be fair, reasonable, and in the public interest.   Notice of Lodging of Proposed Consent Decree, ECF No. 112.

**I. Introduction**

  This case involves two Surface Mine Permits—S602089 and S304191— and WV/NPDES Permit WV1009311, all issued to Maple Coal Company ("Maple") by the West Virginia Department of Environmental Protection ("WVDEP") to regulate Maple's Sycamore South Surface Mine and Sycamore South Extension in Kanawha and Fayette Counties.

  Plaintiffs are three environmental organizations:   Ohio Valley Environmental Coalition, Inc. ("OVEC"), West Virginia Highlands Conservancy, Inc., and the Sierra Club.   OVEC is a

nonprofit organization incorporated in Ohio with its principal place of business in Huntington, West Virginia.  It has approximately 1,500 members and is dedicated to the improvement and preservation of the environment.  The West Virginia Highlands Conservancy is a West Virginia nonprofit organization with approximately 2,000 members that works for the conservation and wise management of West Virginia's natural resources.  The Sierra Club is a nonprofit organization incorporated in California with more than 600,000 members nationwide and approximately 2,000 members residing in West Virginia.  Among the Sierra Club's diverse interests are the exploration, enjoyment, and protection of surface waters in West Virginia.

On January 4, 2011, Plaintiffs instituted this action for declaratory and injunctive relief based on the citizen suit provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, and the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270.  The First Amended Complaint sets forth three distinct claims for relief against Maple.  Specifically, Plaintiffs allege that Maple violated the selenium limitation contained in permit WV1009311 on 380 separate occasions.

On May 7, 2012, the parties lodged a proposed consent decree with this Court.  The citizen suit provision of the Clean Water Act provides that:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

33 U.S.C. § 1365(c)(3).  Consistent with this provision, the parties served the United States with a copy of the proposed consent decree, which was received by a citizen suit coordinator for the Department of Justice on that same day.  On June 13, 2012, the United States notified the Court that it has reviewed and has no objection to the entry of the decree as it was proposed.

## II. Legal Standards

The Fourth Circuit Court of Appeals has noted that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 152 (4th Cir. 2002) (quoting *Smyth v. Rivero*, 282 F.3d 268, 279–80 (4th Cir. 2002)); *see also Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland*, 478 U.S. 501, 519 (1986); *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n. 10 (1975) (citation omitted); *Alexander v. Britt*, 89 F.3d 194, 199 (4th Cir. 1996).

It has expanded on this principle in *Smyth*, observing that a district court is to scrutinize the proposed decree and make findings prior to entry:

> Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court. As Judge Rubin noted in *United States v. Miami,*
>
>> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates [sic] Constitution, statute, or jurisprudence.
>
> 664 F.2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful.

*Smyth*, 282 F.3d at 280. The Fourth Circuit has further explained:

> In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged. *See Durrett v. Housing Authority of City of Providence*, 896 F.2d 600, 604 (1st Cir.1990). Nevertheless, a district court should not blindly accept the terms of a proposed settlement. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975). Rather, before entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991). In considering the fairness and adequacy of a proposed settlement, the

3

court must assess the strength of the plaintiff's case. *See Flinn*, 528 F.2d at 1172–73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision." *Id.* (internal quotation marks omitted). In particular, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." *Carson v. American Brands, Inc.*, 606 F.2d 420, 430 (4th Cir.1979) (en banc) (Winter, Circuit Judge, dissenting), *adopted by Carson v. American Brands, Inc.*, 654 F.2d 300, 301 (4th Cir.1981) (en banc)(per curiam).

*United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).

### III. Discussion

The Court accepts the proposition that settlements are generally encouraged. A trial in this case would have consumed significant time and expense for the parties as well as a significant amount of judicial resources. Next, the Court turns to the fairness, adequacy, and reasonableness of the proposed decree. Compliance with the Consent Decree will require the Defendant to pay $229,350.00 to the United States Treasury as a civil penalty for violations of the selenium limitations in the CWA and SMCRA permits that are at issue in this case. In addition to the civil penalty, the stipulated penalties described in Part VII of the Consent Decree will be made to the West Virginia Land Trust and used to fund a Supplemental Environmental Project ("SEP"). Appendix A to the Consent Decree describes the SEP in great detail, and provides that the stipulated penalties will be used to restore riparian areas and preserve land within the Kanawha River watershed, an area directly affected by the mining operations at issue in this litigation.

In addition, the Consent Decree requires Maple to propose a bioreactor selenium treatment system and to identify one or more alternative technologies in the event that the preferred technology ultimately fails to achieve compliance with permitted selenium levels, and requires

4

compliance on an aggressive schedule.   In Part XI, Maple agrees to pay the plaintiffs' costs and attorneys' fees leading up to the Consent Decree, which are agreed to be $103,030.00.

In short, the Consent Decree requires Maple to come into compliance with its obligations under federal law, requires the payment of $229,350.00 to the federal government, and requires the payment in the future of stipulated penalties for the SEP which will preserve and protect the watersheds directly affected by Maple's mining operations.

Maple does not admit the alleged violations, and the Court finds this decree to represent a fair compromise of this litigation.   Early on, Plaintiffs faced a dispositive motion involving complicated legal issues such as standing, abstention, the effect of state proceedings on the selenium limitations contained in Maple's NPDES permit, and the diligence of parallel state enforcement actions.   Ultimately, the Court found that Plaintiffs did not have standing to sue for permit violations at one of the outfalls.   The other issues were largely resolved in favor of the plaintiffs, though this settlement arrived just as the Court was poised to decide whether a different Consent Decree, entered in the parallel state enforcement action, rendered Plaintiffs' remaining claims moot.

## IV. Conclusion

Based upon the foregoing, the Court finds that the Consent Decree is fair, adequate, and reasonable.   The court further finds that the proposed agreement is not the product of collusion and is in the public interest.   In light of this conclusion, and there being no objection, the Court **ORDERS** that the Consent Decree be entered with the Court's approval on this date.   With the entry of this decree, the Court **ORDERS** that this action be, and hereby is, dismissed and stricken from the active docket, with the Court retaining jurisdiction over this case as set forth in Part XIV

of the Consent Decree. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and

Order to counsel of record and any unrepresented parties.

ENTER:        June 26, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

6